J-S47041-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL B. LINDGREN | |
| Appellant | No. 509 EDA 2014 |

Appeal from the Judgment of Sentence of November 27, 2013
In the Court of Common Pleas of Northampton County
Criminal Division at No.: CP-48-CR-0003904-2012

BEFORE:  MUNDY, J., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                **FILED SEPTEMBER 08, 2014**

Michael Lindgren appeals the November 27, 2013 judgment of sentence.  We adopt the learned trial court's comprehensive Pa.R.A.P. 1925(a) opinion, and we affirm.

On August 23, 2013, Lindgren appeared before the trial court with the intent to plead guilty but mentally ill to one count of third-degree murder (18 Pa.C.S. § 2502(c)) and one count of aggravated assault—causing serious bodily injury (18 Pa.C.S. § 2702(a)(1)).  Before accepting the plea, the trial court conducted a hearing to determine, pursuant to 18 Pa.C.S. § 314(b),[1] whether Lindgren in fact was mentally ill, and not criminally insane.

_____

[1]     Section 314(b) provides as follows:

**(b) Plea of guilty but mentally ill.**—A person who waives his right to trial may plead guilty but mentally ill.  No plea of guilty

*(Footnote Continued Next Page)*

At the conclusion of the hearing, the trial court determined that Lindgren

suffered from a mental illness at the time of the commission of his crimes.[2]

The trial court then conducted a comprehensive guilty but mentally ill plea

colloquy with Lindgren. During the hearing, the assistant district attorney

summarized the facts underlying the plea as follows:

> On August 21, 2012 in the early evening hours City of Bethlehem police officers were summoned to 209 East Wall Street, City of Bethlehem, Northampton County, on an alarm. When they arrived . . . [within minutes] they found [Lindgren] . . . on the front lawn. He was covered with blood. He was mumbling and said something about ["]I had to kill them.["]
>
> They entered the dark house and upon entering the dark house they found his mother, Shirley Lindgren, she was in a pool of blood, and they found [Lindgren's] father, Ralph Lindgren, also covered with blood. They responded with CPR and emergency

_(Footnote Continued)_ _____

> but mentally ill may be accepted by the trial judge until he has examined all reports prepared pursuant to the Rules of Criminal Procedure, has held a hearing on the sole issue of the defendant's mental illness at which either party may present evidence and is satisfied that the defendant was mentally ill at the time of the offense to which the plea is entered. If the trial judge refuses to accept a plea of guilty but mentally ill, the defendant shall be permitted to withdraw his plea. A defendant whose plea is not accepted by the court shall be entitled to a jury trial, except that if a defendant subsequently waives his right to a jury trial, the judge who presided at the hearing on mental illness shall not preside at trial.

18 Pa.C.S. § 314(b).

[2] In its Rule 1925(a) opinion, the trial court provided a detailed summary of the evidence presented at the section 314(b) hearing. **_See_** Trial Court Opinion, 4/2/2014, at 4-8. Because we adopt that opinion herein, we need not reproduce that material.

medicine. Shirley Lindgren was ultimately taken to the hospital and pronounced dead. Ralph Lindgren was taken to the hospital and treated.

[A subsequent] autopsy of Shirley Lindgren determined that she died of blunt force trauma. The evidence would show that the blunt force trauma came from a prolonged beating by [Lindgren] using his hands and feet . . . . The same would hold true with respect to Ralph Lindgren. He suffered a prolonged beating from [his son Lindgren.] . . . Mr. Lindgren suffered multiple to his – all parts of his body, the most significant of which was a prolonged subdural hematoma and profuse bleeding on the brain.

Notes of Testimony, 8/23/2013, at 21-23. At the conclusion of the hearing, the trial court accepted Lindgren's guilty but mentally ill plea.

On November 27, 2013, the trial court sentenced Lindgren to twenty to forty years' incarceration on the third-degree murder charge, and to five to twenty years' incarceration on the aggravated assault charge. Imposed consecutively, these standard range sentences resulted in an aggregate twenty-five to sixty year prison term. On December 9, 2013, Lindgren filed a post-sentence motion for reconsideration of his sentence. On January 10, 2014, the trial court denied Lindgren's motion.

On February 10, 2014, Lindgren filed a notice of appeal. In response, the trial court directed Lindgren to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On February 28, 2014, Lindgren timely filed a concise statement. Finally, on April 2, 2014, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Presently, Lindgren raises the following two questions for our review:

A. Whether the trial court improperly considered evidence outside of the record for the purpose of sentencing [Lindgren] when the trial court introduced and considered the obituary of the decedent?

B. Whether the trial court abused its discretion by imposing sentences that are the maximum sentences that could be imposed upon [Lindgren] without deviating into an aggravated range sentence and failed to consider [Lindgren's] long term mental illness, which had been previously accepted by the trial court at the time of the guilty, but mentally ill, plea?

Brief for Lindgren at 5.

Both of Lindgren's claims implicate the discretionary aspects of his sentence. In evaluating such claims, our review is governed by the legal principles that follow.

Challenges to the discretionary aspects of sentencing are not reviewable as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000). Rather, an appellant challenging the discretionary aspects of his or her sentence must satisfy the following four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

**Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006) (some citations omitted).

Thus, to obtain review of the merits of a challenge to the discretionary aspects of his sentence, Lindgren must include a Pa.R.A.P. 2119(f)[3] statement in his brief demonstrating that he has raised a substantial question that the sentence imposed is not appropriate under the Sentencing Code. 42 Pa.C.S. § 9781(b). A substantial question requires a showing that "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." ***Commonwealth v. Tirado***, 870 A.2d 362, 365 (Pa. Super. 2005). Our inquiry "must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." ***Id.***

Once an appellant has presented a substantial question, we employ the following standard of review:

_____

[3]    In pertinent part, Rule 2119 provides:

An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

Pa.R.A.P. 2119(f). Lindgren has preserved his issues in his post-sentence motion. Moreover, Lindgren has included a Rule 2119(f) statement in his brief. ***See*** Brief for Lindgren at 10. Accordingly, Lindgren has complied with the technical requirements necessary to present a challenge to the discretionary aspects of his sentence.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006).

Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. §§ 9781(c) and (d). Subsection 9781(c) provides:

> The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>
> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>
> In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c).

> In reviewing the record, we consider the following factors:
>
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

- 6 -

(3)    The findings upon which the sentence was based.

(4)    The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

We have reviewed these governing principles in light of the arguments presented by Lindgren and the Commonwealth. Moreover, we have reviewed the trial court's exhaustive and well-reasoned Rule 1925(a) opinion. In the opinion, which exceeds forty pages, the trial court reviewed the statutory provisions governing guilty but mentally ill pleas, the applicable case law pertaining to challenges to the discretionary aspects of a sentence, the certified record, and Lindgren's specific claims. Additionally, the court cited at length the relevant portions of the transcripts that support the court's exercise of its discretion, including the transcripts from the guilty but mentally ill evaluation hearing, the guilty but mentally ill plea hearing, and the sentencing proceeding. The court detailed the information that it considered before imposing the sentence, and the weight that the court assigned to that material. Based upon our review, we agree with the trial court's assessment of Lindgren's claims, including both the court's substantial question analysis and the court's analysis of Lindgren's substantive claims. We adopt the court's thorough analysis as our own, and conclude that the trial court did not abuse its sentencing discretion. A copy of the court's opinion is attached to this memorandum.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/8/2014</u>

**IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY**
**COMMONWEALTH OF PENNSYLVANIA**
**CRIMINAL DIVISION**

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA**<br><br>vs.<br><br>**MICHAEL B. LINDGREN,**<br><br>**Defendant.** | **No.: C-48-CR-3904-2012** |

**PENNSYLVANIA RULE OF APPELLATE PROCEDURE**
**1925(a) STATEMENT**

**AND NOW**, this 2nd day of April, 2014, the Court issues the following

statement:

Following a guilty plea, sentencing, and denial of a post-sentence

motion, on February 10, 2014, Defendant Michael B. Lindgren ("Lindgren")

filed and served upon this Court a timely Notice of Appeal to the Superior

Court of Pennsylvania. On February 28, 2014, pursuant to our request under

Pa.R.A.P. 1925(b), we received Lindgren's Statement of Matters Complained

of on Appeal. For the reasons that follow, we respectfully suggest that

Lindgren's appeal lacks merit and should be dismissed.

## BACKGROUND

### I. The Commonwealth's Allegations

The Commonwealth alleged that on the evening of August 21, 2012,

police officers from the City of Bethlehem Police Department were summoned

by a sounding alarm to a home at 209 East Wall Street in the City of

Bethlehem in Northampton County, Pennsylvania. *See* Notes of Testimony, Guilty Plea Hrg. at 21, *Commonwealth v. Lindgren*, C-48-CR-3904-2012 (C.P. Northampton Co. Aug. 23, 2013) ("N.T. Guilty Plea Hrg."). The officers arrived at the home within minutes. *See id.* They found Lindgren on the front lawn, covered with blood. *See id.* at 21-22. He mumbled, "I had to kill them." *Id.* at 22.

The house was dark. *See id.* Upon entering the house, the officers discovered a man and a woman, later identified as Lindgren's parents, John and Shirley Lindgren, covered with blood. *See id.* The officers responded with CPR and emergency medicine. *See id.* John and Shirley Lindgren were taken to the hospital, where Shirley Lindgren was pronounced dead and John Lindgren was treated. *See id.*

A subsequent autopsy revealed that Shirley Lindgren had died of blunt force trauma. *See id.* John Lindgren had suffered multiple injuries to numerous parts of his body, including a subdural hematoma and profuse bleeding on the brain. *See id.* at 22-23. The Commonwealth alleged that Lindgren had inflicted these injuries on his parents through a prolonged beating, using his hands and feet. *See id.* at 22.

II. Lindgren's Guilty Pleas

On August 2, 2013, Lindgren's counsel advised the Court that Lindgren would be proffering a plea of "guilty but mentally ill" pursuant to 18 Pa.C.S.A. § 314(b). Notes of Testimony, Pretrial Conf. at 2-3, *Commonwealth v.*

2

*Lindgren*, C-48-CR-3904-2012 (C.P. Northampton Co. Aug. 2, 2013). Section 314 provides:

> **§ 314. Guilty but mentally ill**
>
> **(a) General rule.**--A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.
>
> **(b) Plea of guilty but mentally ill.**--A person who waives his right to trial may plead guilty but mentally ill. No plea of guilty but mentally ill may be accepted by the trial judge until he has examined all reports prepared pursuant to the Rules of Criminal Procedure, has held a hearing on the sole issue of the defendant's mental illness at which either party may present evidence and is satisfied that the defendant was mentally ill at the time of the offense to which the plea is entered. If the trial judge refuses to accept a plea of guilty but mentally ill, the defendant shall be permitted to withdraw his plea. A defendant whose plea is not accepted by the court shall be entitled to a jury trial, except that if a defendant subsequently waives his right to a jury trial, the judge who presided at the hearing on mental illness shall not preside at the trial.
>
> **(c) Definitions.**--For the purposes of this section and 42 Pa.C.S. § 9727 (relating to disposition of persons found guilty but mentally ill):
>
> (1) *"Mentally ill."* One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.
>
> (2) *"Legal insanity."* At the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know he was doing what was wrong.

3

**(d) Common law M'Naghten's Rule preserved.**--Nothing in this section shall be deemed to repeal or otherwise abrogate the common law defense of insanity (M'Naghten's Rule) in effect in this Commonwealth on the effective date of this section.

18 Pa.C.S.A. § 314.

On August 23, 2013, in accordance with section 314(b), the Court held a hearing to determine whether Lindgren had been "mentally ill" but not "legally insane" on the night he assaulted his parents. *See* Notes of Testimony, Mental Illness Hrg., *Commonwealth v. Lindgren*, C-48-CR-3904-2012 (C.P. Northampton Co. Aug. 23, 2013) ("N.T. Mental Illness Hrg."). The Court heard testimony from Lindgren's expert, Frank M. Dattilio, Ph.D. *See id.* at 3-21. The Court received into evidence Dr. Dattilio's eighteen-page written report of his psychological evaluation of Lindgren dated May 23, 2013. *See id.* at 6, 17. Dr. Dattilio testified that Lindgren had suffered from mental illness since his middle school years, had been treated by numerous mental health professionals, and had required numerous hospitalizations. *See* N.T. Mental Illness Hrg. at 9-10, 16.

> As time went on it became more clear that he qualified for a schizoaffective disorder with paranoid delusions and he also had a major mood disorder that involved a bipolar -- bipolarity which meant he swung from being maniacally high to being suicidal, depressed. So combined, in my opinion, that's one of the worst mental illnesses you can have because you not only have schizoaffective disorder but you have fluctuating mood. That's extremely severe.

*Id.* at 10-11.

4

Dr. Dattilio testified that Lindgren's medications had been only partially successful at controlling his symptoms and that Lindgren had sometimes missed appointments with his treating providers and stopped taking his medication. *See id.* at 11-12.

> [Lindgren] had been under a regimen that had involved antipsychotics, mood stabilizer and anti-anxiety medications for years. It's not uncommon when individuals have these types of illnesses that medications work for a while and then they kind of wane and then we have -- you have to change them and re-evaluate them.
>
> In addition, he had, for the most part, been compliant but there were times when he would miss appointments and then his medication would run out. It seemed to be the pattern that when the medications were running out and he was not medicated for periods of time that he decompensated rapidly and, again, not uncommon with this type of disorder, so there were acute exacerbations by virtue of the fact of the medication interruption but also psychosocial stressors that may have had to do with family or living arrangements or such circumstances like that.

*Id.*

Dr. Dattilio said that approximately two weeks prior to Lindgren's assault on his parents, Lindgren had stopped treatment with his psychiatrist and stopped taking his medications. *See id.* at 12.

> Q. Did you learn that he had stopped taking his medications about two weeks prior to this assault on his parents?
>
> A. Yes, he had missed some visits with his psychiatrist, his treating psychiatrist, so he was terminated. And then he was without medication for a solid two weeks.

*Id.* at 12. Dr. Dattilio said that after Lindgren used his supply of one prescription drug, Lindgren chose not to refill it. *See id.* at 13-14.

5

THE COURT: [Y]our report says Mr. Lindgren informed me he had a one month supply left after that prescription ran out he failed to renew it.

DR. DATTILIO: Yes, that was just one medication. He was on a barrage of medications. He was on four or five. So the one that he had was not for the primary compounds.

THE COURT: He didn't say why he did not renew it?

DR. DATTILIO: He was just in a very, very bad frame of mind at that point, very paranoid, so by that time he didn't engage -- no, he wasn't clear on why he didn't.

*Id.* at 14.

Dr. Dattilio said that the abrupt termination of Lindgren's treatment and medications would have had a dramatically destabilizing impact on his mental condition. *See id.* at 12-13.

Q. And can you describe what would be the effect -- well, let me ask you this. I -- you have reviewed the types of medication he was on or supposed to be on at the time this assault occurred?

A. Yes.

Q. And can you describe for the Court what would be the effects of suddenly ceasing to take those medications.

A. It would be very similar to a diabetic who relies on diabetic medications, that you go into shock or your body reacts to the lack of the medication. So in this particular case antipsychotic medications that help field his thinking and help keep his paranoid delusions in control is no longer there so they're spinning out of control. And, in addition, you have that added factor of his mood stabilization, so you have moods going up and down where he may be ranting and maniacal or may be extremely depressed. So it makes for a quite agitated, unbalanced picture of someone who's not thinking clearly at all.

*Id.* at 12-13.

6

Dr. Dattilio said that the termination of Lindgren's treatment and medications were among the precipitating factors that led him to assault his parents. *See id.* at 14-15.

> Q. Doctor, were you able to form an opinion as to how his psychological condition and the diagnosis you just rendered combined with the lack of medications contributed to his criminal conduct in this case?
>
> A. Yes, he had been very paranoid and very agitated. Part of his medication regimen included medication for sleep, so on top of this very chronic illness that he has he also was sleep deprived. When you add that measure, and many of us can relate when we're sleep deprived without mental illness we're not in our best form, so this exacerbated his situation, made him very agitated, very delusional, and he started to look for help, trying to get in contact with his sister-in-law who's a social worker who had helped him in the past, and he was roaming the streets, sometimes for a while, hadn't been bathing for a while. He was really in a decompensated state and I believe that he conveyed to me that he went to his parents' home that evening trying to get in contact with his sister-in-law, so he was trying to get help as he was when he went into the police station, and that's when he just snapped.

*Id.*

Dr. Dattilio testified that Lindgren had been mentally ill but not legally insane at the time he assaulted his parents. *See id.* at 16.

> Q. And I had also asked you to express an opinion whether or not he satisfied the M'Naghten standard for legal insanity?
>
> A. That was the first line for determination, as always in these cases, and he did not meet that criteria.
>
> Q. Is that based in part upon his inability to recall and, therefore, your inability to determine exactly what happened inside that house?

7

A. His inability to recall and know the wrongfulness of his acts.

Q. But you did find him basically mentally ill and that contributed to his criminal conduct?

A. Without a doubt.

*Id.* At the conclusion of the mental illness hearing, based on the testimony and evidence presented, the Court found that, at the time of the commission of the crimes, Lindgren had been "mentally ill" but not "legally insane." *See id.* at 21-22.

After the Court found Lindgren "mentally ill," in accordance with 18 Pa.C.S.A. § 314(b), the Court proceeded to conduct a guilty plea hearing, where Lindgren pleaded "guilty but mentally ill" to one count of murder in the third degree for the murder of his mother, Shirley Lindgren, and one count of aggravated assault, causing serious bodily injury, for the assault on his father, John Lindgren. *See* N.T. Guilty Plea Hrg. at 7, 23-24. As an aid to sentencing, the Court ordered a Presentence Investigation ("PSI") from the Northampton County Department of Adult Probation and Parole. *See id.* at 24.

III. The Sentencing

On November 27, 2013, Lindgren was sentenced. *See* Notes of Testimony, Sentencing Hrg., *Commonwealth v. Lindgren*, C-48-CR-3904-2012 (C.P. Northampton Co. Nov. 27, 2013) ("N.T. Sentencing Hrg."). Pursuant to 42 Pa.C.S.A. § 9727(a), before imposing sentence, the Court heard testimony

8

on the issue of whether, at the time of sentencing, Lindgren was "severely mentally disabled and in need of treatment" within the meaning of the Mental Health Procedures Act, 50 P.S. § 7101 *et seq.* *See id.* at 3-10. Section 9727 provides:

> **§ 9727. Disposition of persons found guilty but mentally ill**
>
> **(a) Imposition of sentence.**--A defendant found guilty but mentally ill or whose plea of guilty but mentally ill is accepted under the provisions of 18 Pa.C.S. § 314 (relating to guilty but mentally ill) may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense. Before imposing sentence, the court shall hear testimony and make a finding on the issue of whether the defendant at the time of sentencing is severely mentally disabled and in need of treatment pursuant to the provisions of the act of July 9, 1976 (P.L. 817, No. 143), known as the "Mental Health Procedures Act."
>
> **(b) Treatment.--**
>
> (1) An offender who is severely mentally disabled and in need of treatment at the time of sentencing shall, consistent with available resources, be provided such treatment as is psychiatrically or psychologically indicated for his mental illness. Treatment may be provided by the Bureau of Correction, by the county or by the Department of Public Welfare in accordance with the "Mental Health Procedures Act."
>
> (2) The cost for treatment of offenders found guilty but mentally ill, committed to the custody of the Bureau of Correction and transferred to a mental health facility, shall be borne by the Commonwealth.

42 Pa.C.S.A. § 9727.

The Court heard testimony from Dr. Dattilio, who, in addition to performing his previous psychological evaluation of Lindgren, had examined Lindgren on the morning of the sentencing hearing. *See id.* at 5-6. The

9

Court incorporated Dr. Dattilio's May 23, 2013 written report into the record for purposes of the sentencing hearing. *See id.* at 9. Dr. Dattilio testified that his previous diagnosis remained unchanged. *See id.* at 8-9.

> Q. Now as of this morning when you saw Mr. Lindgren was there any change in your previous diagnosis of his mental illness?
>
> A. No, he is still maintained on the same regimen of psychotropic medication and his diagnosis remains the same, schizoaffective disorder with strong paranoid traits.
>
> Q. And he remains in need of treatment as of today?
>
> A. Absolutely.
>
> Q. And your prognosis is he'll remain in need of treatment for the rest of his life?
>
> A. Absolutely.
>
> . . . .
>
> THE COURT: Just one question. You're familiar with the Mental Health Procedures Act?
>
> DR. DATTILIO: Yes.
>
> THE COURT: And do you believe Mr. Lindgren is today severely mentally disabled?
>
> DR. DATTILIO: Yes, sir.

*Id.* at 8-10. Based on the testimony and evidence presented, the Court found that, at the time of sentencing, Lindgren was severely mentally disabled and in need of treatment. *See id.* at 10, 36.

10

Lindgren, through his attorney, indicated that he had reviewed Dr. Dattilio's written report and the PSI and had found them to be factually accurate except that, with respect to page three of the PSI, he asserted that (1) he had not told police that he "had to kill" his mother; and (2) he had not stated at the time of the PSI that his father "got what he deserved." *Id.* at 11-13.

Lindgren reviewed the guideline calculations on the Sentencing Guideline Forms and acknowledged, through his attorney, that the calculations were correct. *See id.* at 13-14. The calculations indicated that Lindgren had a prior record score of one. *See id.* at 14; Guideline Sentence Form One, *Commonwealth v. Lindgren*, No. C-48-CR-3904-2012 (C.P. Northampton Co. 2013) ("Sentencing Guideline Form One"); Guideline Sentence Form Two, *Commonwealth v. Lindgren*, No. C-48-CR-3904-2012 (C.P. Northampton Co. 2013) ("Sentencing Guideline Form Two"). For the charge of murder in the third degree, the Sentencing Guideline Form indicated a sentencing level of five, an offense gravity score of fourteen, a standard-range sentence of seven years to twenty years as a minimum, a mitigated-range sentence of six years as a minimum, and a statutory maximum sentence of forty years. *See* N.T. Sentencing Hrg. at 14; Sentencing Guideline Form One. For the charge of aggravated assault, causing serious bodily injury, the Sentencing Guideline Form indicated a sentencing level of five, an offense gravity score of eleven, a standard-range

11

sentence of forty-two months to sixty months as a minimum, a mitigated-range sentence of thirty months as a minimum, an aggravated-range sentence of seventy-two months as a minimum, and a statutory maximum sentence of twenty years. *See* N.T. Sentencing Hrg. at 14; Guideline Sentence Form Two.

The Court heard statements by Lindgren's brother, Tom Lindgren, and sister-in-law, Cynthia I. Lindgren. *See* N.T. Sentencing Hrg. at 15-20. Tom Lindgren told the Court that Lindgren had shown symptoms of mental illness since junior high school but had not been diagnosed until the 1990s. *See id.* at 18-19. He said:

> In the past 6 months when my wife and I have been permitted to visit Mike while incarcerated he is completely shattered by what happened and still can't comprehend what caused him to do what he did. . . . We all realize that Mike will continue to need treatment for his illness for the rest of his life but we also have come to know that with the proper care Mike can carry on with his life as a threat to no one.

*Id.* at 20.

Cynthia Lindgren told the Court that, in her opinion, Lindgren had committed his crimes because his psychiatrist had prescribed inappropriate medication and had failed to ensure that Lindgren was regularly supervised by a therapist, despite repeated warnings from family members that Lindgren's condition was deteriorating. *See id.* at 16-17.

> Obviously this has been a horrible tragedy for our family, but I work as a therapist, I'm a licensed clinical social worker in Maryland, and I had so much -- I put the blame on the psychiatrist that has been seeing [Lindgren] for 15 years. . . .

12

Mike had been hospitalized a year before. He had called me very -- I could tell that he was psychotic and I convinced him to commit himself to St. Luke's. He had had this psychotic break on the medication Saphris and Saphris is not commonly used to control schizophrenia. . . . Nevertheless, the doctor put him back on the medication once he was released from St. Luke's less than 4 months later and his psychiatrist also did not require that he see a therapist. . . . He came to visit us in March 2012 and I could tell that he was going downhill again. He had become pretty paranoid and his mood was labile. So at that point I wrote a letter to his psychiatrist. . . . Shirley [Lindgren] finally called him in August and he had his secretary call Mike to make an appointment and Mike didn't keep that appointment because by that time he was not in touch with reality. So I guess I just wanted to put that out there, that -- that Mike has been failed by his doctor, and I just wanted you to know that.

*Id.*

Lindgren's counsel told the Court:

Dr. Dattilio, when he testified at the guilty plea proceeding and in his report, has described this defendant's adjustment to society and compliance with the law for long periods of time when he was on a proper psychotropic medication regimen. That regimen was interrupted in the weeks or few months and weeks leading up to this tragedy as testified to by his sister-in-law, Cindy Lindgren. The records do bear out she was in contact with the doctor expressing her concerns on numerous occasions and the weeks leading up to this event.

*Id.* at 21.

The Commonwealth presented the Court with a written victim impact statement by John Lindgren which it shared with defense counsel. *See id.* at 22-23. By agreement of the parties, the Court ordered that the victim impact statement be filed under seal. *See id.*

The Court presided over Lindgren's mental illness, guilty plea, and sentencing hearings and had the opportunity to observe his demeanor during

13

those proceedings. At the sentencing hearing, the Court provided a lengthy and detailed description of information taken from the PSI, the Sentencing Guideline Forms, the parties' respective sentencing memoranda, the statements made by defense counsel, counsel for the Commonwealth, and Lindgren's family members, the written report of Dr. Dattilio's psychological evaluation, and Dr. Dattilio's testimony at the guilty plea hearing and the sentencing hearing. *See id.* at 24-31. The Court discussed Lindgren's childhood, family relationships, peer relationships, educational background, extracurricular activities, work history, military service, drug and alcohol use, and difficulties with mental illness and treatment, the crimes Lindgren had committed, and the impact of Lindgren's crimes on the community. *See id.* After reviewing this information, the Court stated:

> In 2011, Mr. Lindgren's condition began to deteriorate and at that time he said his parents were Satan's Disciples and he wanted them executed. Due to his mental health condition Mr. Lindgren was hospitalized several times at numerous institutions including Muhlenberg Hospital, St. Luke's Hospital, the Horsham Clinic and Fairview State Hospital. He has been prescribed numerous different medications by various different healthcare providers over the course of his life. At one point these medications seemed to have worked to the point he was able to live somewhat of a normal life.
>
> In the summer of 2012, however, Mr. Lindgren completely stopped taking all of his medications. It was at this point in time that the defendant then assaulted his mother and father at their home in August of 2012. Following his arrest, he was admitted to Torrance State Hospital for treatment. While there he was treated and then released back to Northampton County Prison.
>
> Dr. Dattilio's report concludes that Mr. Lindgren has had a consistent diagnosis of schizoeffective disorder which has at times been contrasted with paranoid schizophrenia. He states that Mr. Lindgren

14

has a major mood disorder with psychotic content. His report concludes as follows:

It is therefore my opinion to a reasonable degree of psychological certainty that the instant offense was not premeditated and that it was an impulsive act upon encountering his parents in the house. Given his statements and his questioning of his parents' welfare it is clear that Mr. Lindgren did not have premeditations to kill his parents. Based upon his delusions and mental illness he experienced an emotional outburst and lost control of his actions. Also due to Mr. Lindgren's long history of mental illness it is also very unlikely that he is malingering in any way and that he was clearly controlled by his paranoid delusions and serious impairment of the reality at the time of the instant offense.

Mr. Lindgren has expressed some sense of remorse for his actions although he claims he has difficulty feeling guilt. This is likely due to his mental illness which greatly affects his mood and level of sensitivity. It is not that he is unable to recognize what he has done wrong and maintains appreciation for his action but his ability to experience emotion to the extent of experiencing full remorse is substantially impaired, end quote.

Dr. Dattilio's evaluation recommends that Mr. Lindgren clearly warrants incarceration in a mental health facility such as State Correctional Institution Waymart or State Correctional Institution Torrance where his psychiatric needs may best be addressed. He clearly needs to remain on an appropriate regimen of psychotropic medication for the rest of his life.

In addition to Dr. Dattilio's report I have also reviewed the Presentence Investigation. In terms of a prior record as an adult the defendant has been charged twice with retail theft and twice with driving under the influence of alcohol and on one occasion with disorderly conduct.

In terms of education, as I said before, he received a Bachelor's from Penn State University where he majored in business logistics.

In terms of work history, he was only able to maintain a few jobs in the early 1980s. Since 1990 he's continuously been receiving Social Security Disability benefits and has never received an income from working since that time.

15

With respect to the defendant's drug and alcohol history, he stated that he began experimenting with alcohol at the age of 16. He continued to drink beer throughout his entire life and during his last period of drinking would consume approximately a six pack of beer each night. With respect to illegal drugs, he reported experimenting with marijuana at the age of 16 and acknowledges he smoked marijuana throughout his life.

Mr. Lindgren, you stand before this Court after pleading guilty but mentally ill to murder in the third degree for killing your mother, Shirley Lindgren, and to aggravated assault, causing serious bodily injury, to your father, John Ralph Lindgren. You killed your mother and seriously injured your father by inflicting a prolonged beating on both of them using your bare hands and feet.

Although you have a number of factors not in your favor you also have some factors that are in your favor. As an adult your criminal record is limited to two charges of driving under the influence of alcohol, two charges for retail theft and one charge for disorderly conduct. It is also in your favor that you pleaded guilty but mentally ill to the charges currently at issue. In some respects this indicates that you have taken responsibility for your actions. Also in your favor is the fact that Dr. Dattilio's report concludes that your actions in part were caused by your mental illness.

There are a number of factors, however, that are not in your favor. A factor weighing against you is your sporadic work history. You have not been able to maintain a consistent job. You are currently unemployed at the time of your arrest. Also, not in your favor is the nature of the crimes that you have committed. You killed your mother and bludgeoned your father in a fit of rage. Therefore, the negative effect that your crime has had on the community also weighs against you.

One of the issues I must decide is whether your sentences should run concurrent or consecutive to each other. I can impose these sentences either concurrent or consecutive to each other. The crimes that you committed involve two different victims. If I were to impose the two sentences concurrent to each other you would be getting a volume discount for your crimes, two crimes for the price of one. I will not do that.

Mr. Lindgren, since your arrest we've been focused on you, Michael Lindgren, and your Constitutional rights as a citizen. We have not

16

talked about the woman that you killed, your mother, Shirley Lindgren. I did some research and came across Shirley Lindgren's obituary from the August 24, 2012 edition of The Morning Call and it reads as follows:

Shirley A. Lindgren, 77, of Bethlehem, passed away Wednesday, August 22, 2012 in St. Luke's Hospital, Fountain Hill. She and her husband, John Ralph Lindgren, were married 53 years last December. Born in Mesa, Arizona, she was the daughter of the late Merlin O. and Josephine Haley Tryon. She attended Brigham Young University and Lake Forest College in Chicago. Shirley was an executive secretary for Easter Seals retiring in 1997. She served on the Bethlehem Area School Board from 1981 to 1985. Shirley was a founding member of the Bethlehem Special Olympics and served on the Board from 1976 to 2011 and in 2011 was inducted into the Pennsylvania Special Olympics Hall of Fame. She was a member of the League of Women Voters, the Lehigh Women's Club, the Bethlehem Garden Club, the Bethlehem Historic Neighborhood Association and the Parent Advisory Committee of the Bethlehem Area School District from 1975 to 1982. That's her obituary.

I have considered your age, sir, the information you have provided to me, the information in the Presentence Investigation, the sentencing memorandum submitted by the Commonwealth and defense counsel, the information contained in Dr. Dattilio's psychological evaluation, the testimony of Dr. Dattilio at the August 23, 2013 hearing and the hearing today prior to sentencing, the Pennsylvania sentencing guideline forms, the statements made today by Mr. -- I'm sorry, by Mr. Lindgren, counsel, counsel for the Commonwealth, Mr. Lindgren's family members, Mr. John Lindgren's letter, Mr. Lindgren's family relationships and background, the fact that you pleaded guilty and took responsibility for your actions, your prior criminal record, the fact that the crime involved multiple victims, the fact that you have mental and psychological problems, the fact that you are a danger to society, the fact that the victims were particularly vulnerable due to their old age, your education and your sporadic work history, whether you are a good candidate for rehabilitation, your potential rehabilitative needs, your mental illnesses and your need for mental health treatment, the need to deter future similar conduct, the protection of the public, the fact that a lesser sentence would depreciate the seriousness of the crime

17

and the effect that your crime has had on the victims and your community. I have carefully weighed the factors in your favor against the factors not in your favor.

*Id.* at 28-35.

For the charge of murder in the third degree for the murder of Shirley Lindgren, the Court sentenced Lindgren to (1) pay the costs of prosecution; and (2) serve a term of imprisonment in a State Correctional Institution for a minimum period of twenty years to a maximum period of forty years. *See id.* at 35-36. Thus, the sentence for this offense was in the standard range. For the charge of aggravated assault, causing serious bodily injury, for the assault on John Lindgren, the Court sentenced Lindgren to (1) pay the costs of prosecution; and (2) serve a term of imprisonment in a State Correctional Institution for a minimum period of five years to a maximum period of twenty years. *See id.* at 36. Thus, the sentence for this offense was also in the standard range. The Court ordered that the term of imprisonment and parole for the charge of aggravated assault, causing serious bodily injury, run consecutively to the term of imprisonment and parole for the charge of murder in the third degree. *See id.* Therefore, Lindgren's total sentence was a minimum period of twenty-five years to a maximum period of sixty years, the maximum sentence allowed within the standard range. *See id.* The Court gave Lindgren credit for all time served. *See id.* at 37.

18

Because the Court had made a finding that Lindgren was, at the time of sentencing, severely mentally disabled and in need of treatment pursuant to 42 Pa.C.S.A. § 9727(a), the Court directed that, consistent with available resources, Lindgren be provided with such treatment as is psychologically or psychiatrically indicated by his mental illness by the Pennsylvania Department of Corrections. *See id.* The Court further directed that at the completion of such treatment, Lindgren be returned to the Pennsylvania Department of Corrections to serve the balance of his term. *See id.*

IV. Lindgren's Motion for Reconsideration of Sentence

On December 9, 2013, Lindgren filed a motion for reconsideration of sentence, which stated:

> 6. Petitioners believe and therefore aver that the sentences imposed are excessive and in support thereof aver the following:
>
> a) The sentences imposed were at the top end of the standard range in each case, and made consecutive to each other.
>
> b) No greater term of imprisonment could be imposed without deviating from the standard sentencing guideline ranges.
>
> c) While accepting that the Defendant suffered from long term mental illness which contributed to the instant criminal offense, the Court gave no consideration in setting the Defendant's minimum sentence.
>
> d) While accepting and finding that the Defendant was severely mentally disabled and in need of treatment pursuant to 42 P.S. § 9727, the Court then cited the Defendant's sporadic work history as a negative consideration.

19

e) The Court went on to cite the nature of the crime as a negative circumstance.

f) The Court cited the age of the victims as a negative circumstance and further relied upon the obituary of the decedent.

g) The Court improperly found the Defendant to be a danger to society, notwithstanding the fact that in his previous 52 years he had not committed an act of violence.

h) The Court failed to grant any consideration whatsoever to the Defendant in fashioning his minimum sentences, despite the fact that the Defendant suffered from long term mental illness which was exacerbated by the lack of proper medications available to the Defendant in the weeks leading up to the instant offense.

Motion for Reconsideration of Sentence ¶ 6(a)-(h), *Commonwealth v. Lindgren*, C-48-CR-3904-2012 (C.P. Northampton Co. Dec. 9, 2013) ("Motion for Reconsideration of Sentence"). On January 10, 2014, the Court denied Lindgren's motion for reconsideration of sentence. *See Commonwealth v. Lindgren*, C-48-CR-3904-2012 (C.P. Northampton Co. Jan. 10, 2014).

V. Lindgren's Appeal

On February 10, 2014, Lindgren filed a Notice of Appeal. *See* Notice of Appeal, *Commonwealth v. Lindgren*, C-48-CR-3904-2012 (C.P. Northampton Co. Feb. 10, 2014). On appeal, Lindgren asserts that:

1) The Sentencing Court erred in failing to give any consideration in setting the Defendant's minimum sentence for the long term mental illness from which the Defendant suffered and contributed to the instant criminal offense.

2) The Sentencing Court erred by finding the Defendant's plea of guilty but mentally ill to be appropriate, but failing to take into

20

consideration the Defendant's mental illness in fashioning his minimum sentence.

3) The Sentencing Court erred in imposing the greatest term of imprisonment without deviating from the standard sentencing guidelines ranges and making said sentence [sic] consecutive to one another.

4) The Sentencing Court erred in relying in part upon the decedent's obituary in fashioning the Defendant's minimum sentence.

5) The Sentencing Court erred in finding that the Defendant was a danger to society notwithstanding the fact that this was the first time the Defendant ever committed an act of violence.

Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b) ¶¶ 1-5, *Commonwealth v. Lindgren*, C-48-CR-3904-2012 (C.P. Northampton Co. Feb. 28, 2014) ("Statement of Matters Complained of on Appeal").

## DISCUSSION

### I. Legality of Sentence

"In imposing a sentence of total confinement the court shall at the time of sentencing specify any maximum period up to the limit authorized by law . . . ." 42 Pa.C.S.A. § 9756(a). "The court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed." 42 Pa.C.S.A. § 9756(b). "A defendant found guilty but mentally ill or whose plea of guilty but mentally ill is accepted under the provisions of 18 Pa.C.S. § 314 (relating to guilty but mentally ill) may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense." 42 Pa.C.S.A. § 9727(a).

21

Here, for the charge of murder in the third degree, the Court imposed a minimum sentence of twenty years and a maximum of forty years. Because the minimum sentence of twenty years did not exceed half of the maximum sentence of forty years, the sentence was in compliance with the statutory requirements. For the charge of aggravated assault, causing serious bodily injury, the Court imposed a minimum sentence of five years and a maximum of twenty years. Because the minimum sentence of five years did not exceed half of the maximum sentence of twenty years, this sentence was also in compliance with the statutory requirements. Thus, the Court imposed a legal sentence. Because the sentence was in compliance with the statutory requirements and Lindgren has not challenged the constitutionality of the statutory sentencing scheme, Lindgren's appeal challenges only the discretionary aspects of the sentence. *See* 42 Pa.C.S.A. § 9781; *cf. Commonwealth v. Yasipour*, 957 A.2d 734, 740 n.3 (Pa. Super. 2008) (defendant's argument that the sentencing scheme violated the eighth amendment was a challenge to the legality of the sentence).

## II. Reviewability of the Discretionary Aspects of Sentence

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013); *accord Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010); *Commonwealth v. Ladamus*, 896 A.2d 592, 595 (Pa. Super. 2006). In order to obtain review of the discretionary aspects of a

22

sentence, a defendant must first demonstrate that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. *See* 42 Pa.C.S.A. § 9781(b).

> **(b) Allowance of appeal.--**The defendant or the Commonwealth may file a petition for allowance of appeal of the discretionary aspects of a sentence for a felony or a misdemeanor to the appellate court that has initial jurisdiction for such appeals. Allowance of appeal may be granted at the discretion of the appellate court where it appears that there is a substantial question that the sentence imposed is not appropriate under this chapter.

*Id.* "[I]f the [defendant] fails to demonstrate a substantial question, [the Superior Court] may refuse to accept the appeal." *Commonwealth v. Coulverson*, 34 A.3d 135, 142 (Pa. Super. 2011).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Griffin*, 65 A.3d at 935 (quoting *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007)); *accord Commonwealth v. Maneval*, 688 A.2d 1198, 1199-1200 (Pa. Super. 1997). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010); *accord Commonwealth v. Mouzon*, 812 A.2d 617, 627 (Pa. 2002). "In determining whether a substantial question exists, [the appellate Court] does not examine the merits of whether the sentence is actually excessive. Rather, [the Court] looks to

23

whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable." *Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013).

"As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. An appellant must articulate the reasons the sentencing court's actions violated the sentencing code." *Moury*, 992 A.2d at 170-71 (citation omitted). "More specifically, the [defendant] must explain where the sentence falls in relation to the sentencing guidelines, identify what specific provision of the Code and/or what fundamental norm was violated, and explain how and why the sentencing court violated that particular provision and/or norm." *Commonwealth v. Kane*, 10 A.3d 327, 335 (Pa. Super. 2010) (quoting *Commonwealth v. Feucht*, 955 A.2d 357, 383-84 (Pa. Super. 2008)).

The Court must now determine whether Lindgren's challenges raise a substantial question for appellate review.

### III. Existence of a Substantial Question

#### A. Assertion that the Sentence is Disproportionate or Excessive

"[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the sentencing code." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (citing *Commonwealth v. Cruz-Centano*, 668 A.2d 536 (Pa. Super. 1995), *appeal denied*, 676 A.2d 1195 (Pa. 1996) (combination of PSI and standard range

24

sentence, absent more, cannot be considered excessive or unreasonable)). "[W]hen the sentence is within the range prescribed by statute, a challenge to the maximum sentence imposed does not set forth a substantial question as to the appropriateness of the sentence under the guidelines." *Commonwealth v. Kimbrough*, 872 A.2d 1244, 1263 (Pa. Super. 2005) (quoting *Commonwealth v. Brown*, 587 A.2d 4, 6 (Pa. Super. 1991)).

However, "[e]ven before the Guidelines were enacted, [the Pennsylvania Supreme Court] recognized that a trial court could abuse its discretion by imposing a sentence that was 'manifestly excessive,' even when that sentence was within the statutory limits." *Commonwealth v. Mouzon*, 812 A.2d 617, 624 (Pa. 2002). "When a trial court imposes a sentence that is within the statutory limits, 'there is no abuse of discretion unless the sentence is manifestly excessive so as to inflict too severe a punishment.'" *Id.* at 624-25 (quoting *Commonwealth v. Norris*, 375 A.2d 122, 123-24 (Pa. Super. 1977)). Thus, under these authorities, the trial Court has discretion to impose the statutory maximum sentence unless, under the particular circumstances of the case, the statutory maximum would be manifestly excessive.

The General Assembly codified this standard in the Sentencing Code. *See id.* (citing 42 Pa.C.S.A. § 9781(c)). Section 9781(c) states:

> (c) Determination on appeal.--The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

25

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S.A. § 9781(c). "Thus, under the clear and unambiguous language of the statute, the Superior Court is required to . . . vacate sentences within the Guidelines if they are 'clearly unreasonable.'" *Mouzon*, 812 A.2d at 625; *accord Dodge*, 77 A.3d at 1270 ("[A] defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence . . . .").

Here, Lindgren has not alleged that the Court applied the guidelines erroneously or that the Court sentenced him outside the guidelines. Thus, section 9781(c)(1) and (3) do not apply. Under section 9781(c)(2), governing situations in which the defendant was sentenced within the guidelines, Lindgren must demonstrate that the case involves circumstances where the application of the guidelines would be "clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2). In Lindgren's motion for reconsideration of sentence, he asserted that his sentence was "excessive," not "manifestly excessive" or "clearly unreasonable." Motion for Reconsideration ¶ 6. On appeal, he has

26

not even asserted that his sentence was "excessive." Thus, it would appear that Lindgren has not satisfied section 9781(c)(2) and has not demonstrated the existence of a substantial question.

Lindgren's assertions that the Court erred by failing to deviate from the standard range of the guidelines and by imposing consecutive sentences arguably may be interpreted as an implicit assertion that his sentence was manifestly excessive or clearly unreasonable. Assuming, *arguendo*, that Lindgren has implicitly asserted that his sentence was manifestly excessive or clearly unreasonable, the appellate court is not required to accept "bald allegations of excessiveness." *Mouzon*, 812 A.2d at 627. Thus, standing alone, an assertion that the sentence is excessive does not raise a substantial question.

However, a defendant's assertion that his sentence is "disproportionate to his crimes," *i.e.*, "manifestly excessive" or "clearly unreasonable," combined with allegations that the Court failed to consider the sentencing factors set forth in the Sentencing Code or considered impermissible factors, does present a plausible argument that the length of the sentence violates fundamental sentencing norms and therefore raises a substantial question for appellate review. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1272 & n.8 ("This Court has applied *Mouzon* on multiple occasions and determined that [an assertion of disproportionate sentence], in combination with allegations that a sentencing court did not consider the nature of the offenses or provide

27

adequate reasons for its sentence, presents a plausible argument that the length of the sentence violates fundamental sentencing norms."); *Commonwealth v. Diaz*, 867 A.2d 1285, 1287 (Pa. Super. 2005) (defendant raised substantial question where he argued that (1) his sentence "was not warranted under the circumstances" and (2) the Court failed to consider his mental illness as a factor in sentencing). Thus, assuming, *arguendo*, that Lindgren has implicitly asserted that his sentence is manifestly excessive or clearly unreasonable, we will examine the Court's consideration of the sentencing factors to determine whether Lindgren has raised a substantial question.

B. Consideration of Sentencing Factors

The factors a court must consider in sentencing are prescribed by the Sentencing Code. *See* 42 Pa.C.S.A. § 9721(b).

> **(b) General standards.**--In selecting from [permitted sentencing alternatives], the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing . . . .

*Id.*; *accord Commonwealth v. Coulverson*, 34 A.3d 135, 144 (Pa. Super. 2011) ("'When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and

28

rehabilitative needs of the defendant. . . . [A]nd, of course, the court must consider the sentencing guidelines.'") (quoting *Commonwealth v. Fullin*, 892 A.2d 843, 847-48 (Pa. Super. 2006)). To properly weigh the statutory sentencing factors, the Court must consider many aspects of the record, including the particular circumstances of the offense, the impact of the defendant's conduct on the victim and community, and the defendant's age, character, personal characteristics, prior criminal record, and potential for rehabilitation. *See Commonwealth v. Griffin*, 65 A.3d 932, 937 (Pa. Super. 2013); *Commonwealth v. Burkholder*, 719 A.2d 346, 350 (Pa. Super. 1998), *appeal denied*, 747 A.2d 364 (Pa. 1999).

On appeal, the appellate court must determine whether the sentencing court considered the appropriate factors. *See* 42 Pa.C.S.A. § 9781(d).

> **(d) Review of record.--**In reviewing the record the appellate court shall have regard for:
>
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

*Id.*

As noted above, a claim of manifestly excessive or clearly unreasonable sentence combined with an assertion that the Court failed to consider all of the statutory sentencing factors raises a substantial question. *See*

29

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1042-43 (Pa. Super. 2013) (Court allegedly disregarded gravity of the violation, need for public protection, and/or defendant's rehabilitative needs); *Dodge*, 77 A.3d at 1273 (Court allegedly disregarded nature and circumstances of the offense and defendant's rehabilitative needs); *Coulverson*, 34 A.3d at 146 ("The court's discussion . . . strongly suggests its determination that the defendant should spend as much of his life in prison as the court could order, notwithstanding the tragedy and dysfunction underlying [the defendant's] own life, his individual need for effective intervention, or any rehabilitation he might receive.").

Similarly, a claim of manifestly excessive sentence combined with an assertion that the Court considered impermissible factors raises a substantial question. *See Dodge*, 77 A.3d at 1276 (court allegedly considered impermissible factor of defendant's failure to take responsibility for crimes to which he had not admitted); *Commonwealth v. Coulverson*, 34 A.3d 135, 148 (Pa. Super. 2011) ("[The sentence] must . . . not be treated as a means to indefinite parole, or worse, as a means of private retribution or judicial policy-making."); *Commonwealth v. Roden*, 730 A.2d 995, 997-98 (Pa. Super. 1999) (Court allegedly relied on impermissible factor of negative impact the defendant's crimes would have on working mothers who relied on babysitters).

30

However, an assertion that the Court failed to consider particular facts of record does not raise a substantial question. *See Dodge*, 77 A.3d at 1271 n.8 ("Careful litigants should note that arguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 does present a substantial question whereas a statement that the court failed to consider facts of record, though necessarily encompassing the factors of § 9721, has been rejected."); *Commonwealth v. Montalvo*, 641 A.2d 1176, 1186 (Pa. Super. 1994) ("An allegation that the sentencing court 'failed to consider' or 'did not adequately consider' facts of record is effectively a request for this court to substitute its judgment for that of the lower court.").

Here, Lindgren has asserted that (1) the Court failed to adequately consider one of the statutory factors, his rehabilitative needs, *i.e.*, his mental illness; (2) the Court considered an impermissible factor, *i.e.*, Shirley Lindgren's obituary; and (3) the Court drew an unwarranted inference from the evidence in the record, *i.e.*, it determined that Lindgren was a danger to society despite the fact that he had never committed a violent act prior to the crimes at issue in this case. *See* Motion for Reconsideration of Sentence ¶¶ 1-3. Based on the above-cited authorities, a claim that the Court failed to give adequate consideration to particular facts of record does not raise a substantial question. Thus, Lindgren's claim that the Court erroneously inferred that he was a danger to society despite the fact that he had never committed a violent act prior to his assault on his parents improperly invites

31

the appellate court to substitute its judgment for that of the sentencing court and therefore does not raise a substantial question. *See Dodge*, 77 A.3d at 1271 n.8; *Montalvo*, 641 A.2d at 1186. However, Lindgren's assertions that the Court failed to consider one of the statutory factors, *i.e.*, his mental illness, and that the Court considered an impermissible factor, *i.e.*, Shirley Lindgren's obituary, may be deemed to raise a substantial question. *See Commonwealth v. Diaz*, 867 A.2d 1285, 1287 (Pa. Super. 2005).

> Diaz now claims that the trial court committed a manifest abuse of discretion in sentencing where the court stated Diaz's mental illness would not in any manner modify or reduce his sentence and by imposing what essentially amounts to a life sentence. Framed in this manner, Diaz's challenge to the discretionary aspect of his sentence raises a substantial question and thus provides us with the opportunity to review the claim. *See Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002).

*Id.* Accordingly, we will now address the merits of Lindgren's appeal.

## IV. Appropriateness of Lindgren's Sentence

### A. Standard of Review

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Mouzon,* 828 A.2d 1126, 1128 (Pa. Super. 2003). "To constitute an abuse of discretion, the sentence imposed must either exceed the statutory limits or be manifestly excessive." *Id.* "In this context, an abuse of discretion is not shown merely by an error in judgment." *Id.* "Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

32

judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.; accord Commonwealth v. Walls,* 926 A.2d 957, 961 (Pa. 2007) ("Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review."); *Commonwealth v. Ellis,* 700 A.2d 948, 958 (Pa. Super. 1997) ("[T]he appellate courts must give great weight to the sentencing judge's discretion, as he or she is in the best position to measure various factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance or indifference."), *appeal denied,* 727 A.2d 127 (Pa. 1998); *Commonwealth v. Ward,* 568 A.2d 1242, 1243 (Pa. 1990) (sentencing court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it").

B. Presumption that Sentencing Court Properly Considered the Factors

Where the sentencing Court had the benefit of a PSI, the law presumes that the Court considered and weighed the factors appropriately. *See Commonwealth v. Devers,* 546 A.2d 12, 18 (Pa. 1988). Our Supreme Court has stated:

> Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself . . . . [Sentencing judges] are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence

> report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Id.* at 18; *accord Commonwealth v. Griffin*, 65 A.3d 932, 937 (Pa. Super. 2013) (same); *Commonwealth v. Tirado*, 870 A.2d 362, 368 (Pa. Super. 2005) (same).

## C. Cases Finding Abuse of Discretion

Cases in which a sentencing court has been found to have abused its discretion have generally involved extreme sentences combined with a clear failure to consider the statutory factors. *See, e.g., Commonwealth v. Coulverson*, 34 A.3d 135, 146 (Pa. Super. 2011) (where 19-year-old boy with mental health problems was convicted of assault, robbery, burglary, and sex offenses, virtual life sentence of ninety years in the aggregate was "clearly unreasonable"; although sentences were within the standard range and the Court had the benefit of a PSI, the Court referred to the PSI "only as a perfunctory exercise," focused "entirely on the severity of [the defendant's] offenses," and gave "no consideration whatsoever" to defendant's lifelong dysfunction, his cooperation with the Commonwealth, his remorse for his crimes, his attempts a reclaiming a productive role in society, or the possibility that he might have been rehabilitated with mental health treatment); *Commonwealth v. Dodge*, 957 A.2d 1198, 1202 (Pa. Super.

34

2008) ("*Dodge II*") (equivalent of life sentence for nonviolent property crimes, most of which involved receiving stolen costume jewelry, was "clearly unreasonable").

D. Cases Finding No Abuse of Discretion

Where the Court has considered the statutory factors and based its decision on findings in the record and the sentence is not disproportionate to the defendant's crimes, a sentence is not clearly unreasonable. *See Commonwealth v. Klueber*, 904 A.2d 911, 911 (Pa. 2006) (reversing Superior Court and holding that aggregate sentence of thirty-three and one-half to sixty-seven years for 134 counts of possession of child pornography was not "clearly unreasonable"; "The trial court relied on [defendant's] prior history and conducted a lengthy sentencing hearing before finding [defendant] was a high risk for re-offense and was an active danger to the public."); *Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013) (following remand after life sentence was vacated by Pennsylvania Supreme Court) (aggregate sentence of forty years for nonviolent property crimes, most of which involved receiving stolen costume jewelry, was not "clearly unreasonable"; Court considered statutory sentencing factors, defendant had lengthy criminal history, sentences were at lowest end of sentencing range, and sentence did not amount to life sentence, because it would allow defendant to be paroled in his early eighties); *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009) (sentence of twenty to forty years for third

35

degree murder for participating in beating death was reasonable; sentence was within guidelines range, and although court considered mitigating factors, including defendant's psychological issues, it found such factors were outweighed by brutality of crime and indifference to victim's suffering; "The sentencing court merely chose not to give the mitigating factors as much weight as Appellant would have liked and decided that the facts did not warrant imposition of a sentence lower than the standard range."); *Commonwealth v. Malovich*, 903 A.2d 1247, 1254 (Pa. Super. 2006) (where defendant was serving sentence of eighteen months' probation for theft by deception and was found in possession of marijuana, Court's decision to revoke his probation and sentence him to eighteen months to three years in state prison was not "manifestly unreasonable"; "The record thus reveals not just that Appellant was likely to commit another offense, but also that he had in fact done so. . . . In light of the court's observations on Appellant's intractable attitude and behavior, we find no basis to conclude that the sentence was excessive or disproportionate.").

The Court in *Dodge* stated:

> Appellant's sentence would allow him to be paroled in his early eighties, unlike his original sentence that would have left him incarcerated until over 100 years of age, and his previous sentence that would have resulted in his incarceration until he surpassed age ninety-three. The sentence at issue, though lengthy, is not the equivalent of a life sentence.

77 A.3d at 1276.

Here, as in *Dodge*, Lindgren's aggregate sentence of twenty-five to sixty years is lengthy but not the equivalent of a life sentence, because it would allow Lindgren to be paroled in his seventies. In addition, as more fully set forth below, the Court considered all appropriate factors, imposed a reasonable sentence, and placed its reasons on the record.

### E. Consideration of Mental Illness

"Mental illness is clearly a factor that may be considered in sentencing." *Commonwealth v. Diaz*, 867 A.2d 1285, 1287 (Pa. Super. 2005). "However, . . . it does not mandate a modification or reduction in any sentence that would or could be imposed. . . . There is no mandatory reduction in sentence because a defendant has acted due, at least in part, to mental illness." *Id.; Commonwealth v. Santiago*, 855 A.2d 682, 701 (Pa 2004); *Commonwealth v. Yasipour*, 957 A.2d 734, 742 (Pa. Super. 2008). "The sole effect of a guilty but mentally ill plea is an evaluation of the defendant prior to sentencing and, potentially, a prescribed course of mental health treatment." *Miskovitch v. Pennsylvania Bd. of Probation & Parole*, 77 A.3d 66, 72 (Pa. Cmwlth. 2013) (citing 42 Pa.C.S.A. § 9727(a), (b)). "This evaluation and treatment arises not from an understanding that what the offender did was less serious because of his mental illness, but rather treatment may be required because of an on-going condition." *Id.* Thus, a Court may find that a defendant's mental illness is outweighed by other factors. *See Diaz*, 867 A.2d at 1287 n.5 (citing *Commonwealth v. Guth*, 735 A.2d 709 (Pa. Super. 1999) as an

37

example of a case in which "mental health played no mitigating factor"; "Guth pled guilty but mentally ill to attempted burglary, yet was sentenced beyond the aggravated range to a term of 4 to 20 years' incarceration.").

> In reading the entire rationale of the court in sentencing, it is apparent that the trial court considered a wide range of factors, including [defendant's] depression, in fashioning a sentence. It is also apparent that the trial court chose, in its discretion, to place greater weight on the nature of the crimes, the effect the crimes had on the victims, and [defendant's] intelligence and maturity.

> Given the totality of the trial court's comments during sentencing, we cannot agree with [defendant] that the trial court ignored the possible mitigating circumstance of mental impairment. Rather, we believe the trial court's comments, taken in context, to mean that in this matter [defendant's] depression did not entitle him to a reduction in sentence. Therefore, we do not believe the trial court abused its discretion here.

*Id.* at 1287-88 (citations and footnotes omitted).

F. The Court's Balancing of the Factors Here

The Court presided over Lindgren's mental illness, guilty plea, and sentencing hearings and had the opportunity to observe his demeanor during those proceedings. As an aid to sentencing, the Court ordered, received, and reviewed the PSI prepared by the Northampton County Department of Adult Probation and Parole. *See* N.T. Guilty Plea Hrg. at 24. The Court reviewed Dr. Dattilio's eighteen-page written report of his psychological evaluation of Lindgren, which was made a part of the record for purposes of sentencing. *See* Mental Illness Hrg. at 6, 17; Sentencing Hrg. at 9, 24. At the sentencing hearing, the Court heard testimony by Dr. Dattilio and statements by Lindgren's counsel, counsel for the Commonwealth, and Lindgren's family

38

members, including the written victim impact statement submitted by Lindgren's father. *See* N.T. Sentencing Hrg. at 3-10, 20-23.

1) Lindgren, through his attorney, told the Court that the PSI and Dr. Dattilio's report were factually accurate except that, with respect to page three of the PSI, he asserted that (1) he had not told police that he "had to kill" his mother; and (2) he had not stated at the time of the PSI that his father "got what he deserved." *Id.* at 11-12.

2) Lindgren, through his attorney, told the Court that the guideline calculations in the Sentencing Guideline Forms were correct. *See id.* at 13-14.

3) Tom Lindgren, Lindgren's brother, told the Court that he believed Lindgren would not pose a danger if he were given proper treatment. *See id.* at 20 ("We all realize that Mike will continue to need treatment for his illness for the rest of his life but we also have come to know that with the proper care Mike can carry on with his life as a threat to no one.").

4) Cynthia Lindgren told the Court that, in her opinion, Lindgren had committed his crimes because his psychiatrist had prescribed inappropriate medication and had failed to ensure that Lindgren was regularly supervised by a therapist, despite repeated warnings from family members that Lindgren's condition was deteriorating. *See id.* at

39

16-17 ("I put the blame on the psychiatrist that has been seeing [Lindgren] for 15 years.").

5) Lindgren's counsel told the Court that Lindgren had functioned within the law for extended periods of time and that his assault on his parents was attributable to the interruption in his treatment and the failure of his psychiatrist to respond to Cynthia Lindgren's warnings that his condition was deteriorating. *See id.* at 21 ("The records do bear out she was in contact with the doctor expressing her concerns on numerous occasions and the weeks leading up to this event.").

6) The Court provided a lengthy and detailed description of information taken from the PSI, the sentencing guideline forms, the parties' respective sentencing memoranda, the statements made by defense counsel, counsel for the Commonwealth, and Lindgren's family members, the written report of Dr. Dattilio's psychological evaluation, and Dr. Dattilio's testimony at the guilty plea hearing and the sentencing hearing. *See id.* at 24-31. The Court discussed Lindgren's childhood, family relationships, peer relationships, educational background, extracurricular activities, work history, military service, drug and alcohol use, difficulties with mental illness and treatment, the crimes Lindgren had committed, and the impact Lindgren's crimes had had on the community. *See id.*

40

The Court acknowledged that there were certain factors in Lindgren's favor. *See id.* at 32.

> As an adult your criminal record is limited to two charges of driving under the influence of alcohol, two charges for retail theft and one charge for disorderly conduct. It is also in your favor that you pleaded guilty but mentally ill to the charges currently at issue. In some respects this indicates that you have taken responsibility for your actions. Also in your favor is the fact that Dr. Dattilio's report concludes that your actions in part were caused by your mental illness.

*Id.*

However, the Court reviewed numerous other factors that were not in Lindgren's favor, especially the nature of the offense and the impact it had on the community. *See id.* ("Also, not in your favor is the nature of the crimes that you have committed. You killed your mother and bludgeoned your father in a fit of rage. Therefore, the negative effect that your crime has had on the community also weighs against you."). The Court's comments at sentencing made clear that the Court had carefully considered the factors in Lindgren's favor as well as other factors the Court was required to consider from the PSI, Dr. Dattilio's report, the testimony, and the Sentencing Guideline Forms. *See id.* at 34-35.

> I have considered your age, sir, the information you have provided to me, the information in the Presentence Investigation, the sentencing memorandum submitted by the Commonwealth and defense counsel, the information contained in Dr. Dattilio's psychological evaluation, the testimony of Dr. Dattilio at the August 23, 2013 hearing and the hearing today prior to sentencing, the Pennsylvania sentencing guideline forms, the statements made today by Mr. -- I'm sorry, by Mr. Lindgren, counsel, counsel for the Commonwealth, Mr. Lindgren's family members, Mr. John Lindgren's

41

> letter, Mr. Lindgren's family relationships and background, the fact that you pleaded guilty and took responsibility for your actions, your prior criminal record, the fact that the crime involved multiple victims, the fact that you have mental and psychological problems, the fact that you are a danger to society, the fact that the victims were particularly vulnerable due to their old age, your education and your sporadic work history, whether you are a good candidate for rehabilitation, your potential rehabilitative needs, your mental illnesses and your need for mental health treatment, the need to deter future similar conduct, the protection of the public, the fact that a lesser sentence would depreciate the seriousness of the crime and the effect that your crime has had on the victims and your community. I have carefully weighed the factors in your favor against the factors not in your favor.

*Id.* In finding that Lindgren was "a danger to society," the Court disagreed with Lindgren's counsel and family members who had expressed their belief that Lindgren could function safely within the law as long as he was prescribed appropriate medication. *See id.* The Court's finding on this issue was not unreasonable in light of Lindgren's serious mental illness, the lack of consistent and reliable medications for his condition, his history of interrupting his own treatment and medication, and the fact that he committed his crimes two weeks after he had stopped his own treatment and medication despite years of therapy and supervision by a psychiatrist and careful monitoring by concerned and knowledgeable family members who had expressly warned Lindgren's psychiatrist that his condition was deteriorating.

The Court stated its reasons for imposing consecutive rather than concurrent sentences. *See id.* at 33.

> One of the issues I must decide is whether your sentences should run concurrent or consecutive to each other. I can impose these sentences either concurrent or consecutive to each other. The

42

crimes that you committed involve two different victims. If I were to impose the two sentences concurrent to each other you would be getting a volume discount for your crimes, two crimes for the price of one. I will not do that.

*Id.* It is well settled that where a defendant has committed crimes against multiple victims, there is no unfairness in imposing consecutive sentences. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1277 (Pa. Super. 2013).

> Appellant suggests that, while the sentencing court was not precluded from considering the amount of stolen property, its decision to impose consecutive sentences for each victim was arbitrary and capricious. According to Appellant, permitting the sentencing scheme in this case could allow for a defendant who steals $1.41 to be convicted of five counts of theft: stealing a dollar bill, a quarter, a dime, a nickel, and a penny. . . . Appellant's analogy to a theft of $1.41 is . . . entirely unconvincing and inapt. The individual in Appellant's hypothetical committed one theft involving one victim. Appellant committed a host of crimes with multiple victims. At its core, Appellant's argument is that he is entitled to concurrent sentences despite there being multiple victims because he was determined to be in the business of receiving stolen property. There is no case law that supports such a holding. Indeed, as the sentencing court cogently stated, "[h]is is the perverse argument that the more crimes one commits, the greater the justification for concurrent sentences." Trial Court Opinion, 6/1/12, at 23. Appellant's failure to cite to any truly analogous authority in support of his argument is not surprising given the lack of precedent for such a position. We decline to establish that precedent based on the argument presented herein.

*Id.*

The record of the sentencing hearing is directly contrary to Lindgren's conclusory assertions that the Court failed to consider his mental illness in fashioning his sentence. Statement of Matters Complained of on Appeal ¶¶ 1-2. The record reflects that the Court considered all of the relevant factors

43

under the sentencing guidelines, including those in Lindgren's favor and those weighing against him. *See id.* at 24-35. The Court's statements during the sentencing hearing demonstrated that the Court was aware of the contents of the PSI and weighed and balanced the information presented there together with the mitigating statutory factors. The Court considered the nature and circumstances of the offenses, the history and characteristics of the defendant, the need for protection of the public, the gravity of the offenses as they related to the impact on the lives of the victims and on the community, Lindgren's rehabilitative needs, his prospects for rehabilitation, and the effect of his crimes on the victim and the community. The Court applied the information contained in the reports and the information presented by the Commonwealth, Lindgren, and Lindgren's family members at the sentencing hearing and considered the sentencing guidelines when fashioning Lindgren's sentence. *See id.* at 34-35.

Lindgren has failed to identify any statements indicating that the Court relied on impermissible factors. Although Lindgren asserts that the Court improperly relied on Shirley Lindgren's obituary, which was outside the record, the Court did not rely on the obituary in imposing sentence. The Court quoted from the obituary, but when the Court provided the comprehensive list of information it had relied upon in imposing sentence, it did not include the obituary. *See id.*

44

Lindgren's sentence of twenty-five years to sixty years was a standard-range sentence and complied with the statutory requirements. The sentence was not disproportionate to Lindgren's crimes of murder in the third degree and aggravated assault, causing serious bodily injury. It was not clearly unreasonable to sentence Lindgren within the guidelines. Lindgren may disagree with the way the Court weighed the statutory factors and the ultimate sentencing decision the Court reached. However, the Court's decision was not an abuse of discretion. Accordingly, we respectfully suggest that Lindgren's appeal lacks merit and should be dismissed.

## CONCLUSION

For the foregoing reasons, we respectfully suggest that (1) Lindgren's sentence was not manifestly excessive; (2) the Court gave proper consideration to the statutory factors, including Lindgren's mental illness; (3) the Court did not err in considering Shirley Lindgren's obituary; (4) the Court properly concluded that Lindgren was a danger to society; (5) the Court did not abuse its discretion in imposing the minimum or maximum sentences; and (6) the Court did not err in ordering that the sentences be consecutive. Accordingly, we respectfully suggest that Lindgren's appeal lacks merit and should be dismissed.

**BY THE COURT:**

**MICHAEL J. KOURY, JR., J.**

45